**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **JOHNNY C. JOHNSON, III,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO. 6:15-CV-1140-JDL** |
| v. | § | |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| **THE CITY OF CANTON, TEXAS,** | § | |
| | § | |
| *Defendant* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Both Plaintiff Johnny C. Johnson, III and Sgt. Hall have consented to proceed before the undersigned for all proceedings in this case. (*See* Doc. No. 23.) However, the Court inadvertently issued a Report and Recommendation on Sgt. Hall's Motion for Summary Judgment. (*See* Doc. No. 44.) By this Order, the Court **WITHDRAWS** the Report and Recommendation (Doc. No. 44) and replaces it with this Memorandum Opinion and Order.

Before the Court is Defendant Sergeant Steve Hall's Motion for Summary Judgment. (Doc. Nos. 34 & 35.) Plaintiff Johnny C. Johnson, III has filed a Response (Doc. No. 38) and Defendant has filed a Reply (Doc. No. 43). Having considered the parties' arguments and the applicable law, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant Sgt. Hall's Motion for Summary Judgment. (Doc. No. 34.)

## I.     BACKGROUND

On July 12, 2014, at approximately 8:00p.m., Mr. Johnson was driving his car through Canton, Texas. (Doc. No. 28, at 2; Doc. No. 35, Ex. 2.) Mr. Johnson passed Sgt. Hall's patrol car in the left lane, then moved in front of Sgt. Hall's vehicle in the right lane. (Doc. No. 35, Ex.

2, 20:01:11.)  Sgt. Hall turned on his lights and siren to pull over Mr. Johnson.  (*Id.*)  Sgt. Hall

told Mr. Johnson "I pulled you over, you were following too close behind a car and then you

nearly cut me off."[1]  (Doc. No. 35, Ex. 3, 0:13.)  Sgt. Hall then asked Mr. Johnson to step out of

the vehicle, where they further discussed the traffic stop.  (*Id.* at 0:24.)  Sgt. Hall commented, "it

took you a little while to pull over."  (*Id.* at 0:30.)  Mr. Johnson responded "because I didn't

think you was pulling me over.  I was like 'what you pulling me over for?'"  (*Id.*)  Sgt. Hall

asked Mr. Johnson about the "attitude," and Mr. Johnson responded that it was "ridiculous" that

he had been pulled over because he had not done anything wrong.  (*Id.* at 0:40.)

    Sgt. Hall returned to his car where he called for a cover unit and checked for warrants.

(Doc. No. 35, Ex. 3, 0:55.)  Officer Donnie Henson responded as the cover unit and arrived at the

scene.  (*See* Doc. No. 35, Ex. 7.)  After running a warrant check on Mr. Johnson, Sgt. Hall

returned to the back of Mr. Johnson's car to speak with Mr. Johnson.  (Doc. No. 35, Ex. 3, 5:30.)

Sgt. Hall informed Mr. Johnson that he was receiving a verbal warning for following too closely

and cutting off Sgt. Hall's car.  (*Id.*)  Sgt. Hall continued by asking Mr. Johnson if he had any

illegal narcotics or weapons in his car.  (*Id.*)  As Sgt. Hall was asking about illegal weapons or

narcotics, he handed back Mr. Johnson's driver's license.  (*Id.*)  Mr. Johnson replied "no" to Sgt.

Hall's illegal weapons or narcotics inquiry, and Sgt. Hall requested permission to search the car.[2]

(*Id.* at 5:40.)  Mr. Johnson refused Sgt. Hall's request to search the vehicle.  (*Id.*)  Sgt. Hall

informed Mr. Johnson that in light of his refusal, Sgt. Hall intended to conduct an open-air dog

sniff outside of Mr. Johnson's car.  (*Id.*)  After Mr. Johnson questioned Sgt. Hall about Sgt.

Hall's right to perform a dog sniff and search of his car, Sgt. Hall stated that "any time anybody

---

[1] Mr. Johnson disputes that he was following too closely behind another car or that he cut off Sgt. Hall.  (Doc. No. 38, at 6-7.)

[2] According to Sgt. Hall's Police Report, "[a]s I talked to Johnny, he stilled seemed very nervous, talking loudly, and moving around a lot, so I asked Johnny for Consent to Search his vehicle."  (Doc. No. 35, Ex. 1.)

refuses consent that's the reason I get the K-9 out." (*Id.* at 7:10.) Sgt. Hall explained that if the dog "alerted," he could search the car without Mr. Johnson's consent. (*Id.* at 7:20.) Mr. Johnson reiterated that he did not want Sgt. Hall to search the car unless he had a warrant and questioned whether Sgt. Hall had pulled him over on the basis of race. (*Id.*)

Sgt. Hall patted down Mr. Johnson for weapons. (*Id.* at 7:40.) He also asked Mr. Johnson's passenger to step out of the car and checked him for weapons. (*Id.* at 7:55.) Sgt. Hall next took his dog, Dino, out of the patrol car. (*Id.* at 8:55.) According to Sgt. Hall, he then "began preparing [Dino] to sniff the outside of Plaintiff's car." (Doc. No. 34, at 7.) Specifically, Sgt. Hall brought out a red rubber ball and invited Dino to play with it before approaching the back of Mr. Johnson's vehicle. (*Id.* at 9:10.) According to Sgt. Hall,

> Dino is an active alert police dog. [(Doc. No. 35, Ex. 4.)] As such, Dino whines and scratches when he detects the odor of marijuana, heroin, meth, or cocaine. Earlier in 2014, Dino was certified as a dual patrol and narcotics detection dog with Sgt. Hall as his handler [(Doc. No. 35, Ex. 5)], and Sgt. Hall was certified as a patrol/narcotics detection dog handler. [(Doc. No. 35, Ex. 6.)] Sgt. Hall has worked with police dogs since 1996. [(Doc. No. 35, Ex. 4.)]

(Doc. No. 34, at 7.) Sgt. Hall retrieved the ball from Dino and the two approached Mr. Johnson's vehicle. (Doc. No. 35, Ex. 3, at 9:50.) Dino began sniffing the rear of Mr. Johnson's car. (*Id.*) As Dino moved up to the passenger side, he began whining, jumping up, and putting his paws on the front passenger door. (*Id.*) Sgt. Hall praised Dino, threw him the red rubber ball, retrieved the ball, and directed Dino to continue smelling the other sides of Mr. Johnson's car. (*Id.* at 10:00.) Dino jumped up on the driver side and rear side of Mr. Johnson's car as he continued moving around the car at Sgt. Hall's direction. (*Id.* at 10:05.)

After the dog sniff was completed, Sgt. Hall told Mr. Johnson that Dino's jumping and scratching was alerting and that based on Dino's positive alert, he would proceed to search Mr.

Johnson's car.[3]  (*Id.* at 10:20; 11:00.)  Sgt. Hall searched Mr. Johnson's car, but did not find any illegal weapons or narcotics.  (*Id.* at 11:20.)

Following the search, Sgt. Hall gave Mr. Johnson a written warning for following too closely and released him.  (Doc. No. 35, Ex. 8.)

Mr. Johnson's Amended Complaint alleges five causes of action against Sgt. Hall in his individual capacity.  (*See* Doc. No. 28.)  However, Mr. Johnson's causes of action can be distilled down to two claims: Mr. Johnson effectively argues under color of 42 U.S.C. § 1983 that Sgt. Hall has violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the 4th Amendment to the United States Constitution.  (Doc. No. 28, 3-4.)

Sgt. Hall argues that he is entitled to Qualified Immunity and all of Mr. Johnson's claims should therefore be dismissed on summary judgment.  (Doc. No. 34, at 8.)  Sgt. Hall argues that Mr. Johnson has failed to meet his burden of showing 1) a constitutional violation and 2) that the constitutional right was so clearly established under the relevant law that a reasonable officer would have known the conduct was unlawful.  (*Id.* at 9 (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).)  Specifically, Sgt. Hall argues that he had reasonable suspicion that Mr. Johnson violated traffic laws to justify the traffic stop.  (*Id.* at 11.)  Sgt. Hall further argues that the dog sniff around the outside of Mr. Johnson's vehicle was not a search, and the dog's alert provided probable cause to search the vehicle.  (*Id.* at 13-15.)  However, Sgt. Hall's Motion does not address the issues of 1) whether Sgt. Hall prolonged the traffic stop beyond the duration necessary to resolve the traffic violation and 2) if so, whether Sgt. Hall had reasonable suspicion

---

[3] Mr. Johnson disputes that Dino was alerting on the car, arguing that Dino was "playing and scratching for the red toy Sgt. Hall had in his hand."  (Doc. No. 38, at 3.)

or some other basis to do so.[4]  The Court will address each of these issues in the Discussion section below.

## II.     LEGAL STANDARD

### A.     Summary Judgment Under Rule 56

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact.  *Id.* at 322.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).  A dispute is "material" if its resolution could affect the outcome of the action.  *Anderson*, 477 U.S. at 248.  The Court must view the evidence and draw inferences in the light most favorable to the nonmoving party.  *Id.* at 255; *Tolan v. Cotton*, 134 S. Ct. 1861, 1862 (2014) (per curiam); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

 Mr. Johnson is proceeding *pro se* in this action.  "A document filed *pro se* is 'to be liberally construed' and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam) (citing *Estelle v. Gable,* 249 U.S. 97 (1976)).  However, "*pro se* status

---

[4] Sgt. Hall's Background section states that "based on Plaintiff's nervous and unusual behavior, Sgt. Hall asked if Plaintiff had any illegal narcotics or weapons in the car and asked for permission to search Plaintiff's car."  (Doc. No. 34, at 6; *see also* Doc. No. 35, Ex. 4, ¶8.)  However, Sgt. Hall did not discuss this point in the Argument section of his Motion.

does not exempt [a litigant] from the usual evidentiary requirements of summary judgment." *See Ellis v. Principi,* 246 F. App'x 867, 869 (5th Cir. Sept. 5, 2007) (per curiam) (citing *Grant v. Cuellar,* 59 F.3d 523, 524 (5th Cir. 1995)).

**B.  Qualified Immunity**

Section 1983 provides a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 426 U.S. 40, 49-50 (1999).  However, the doctrine of "qualified immunity" protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

State actors sued in their individual capacity under 42 U.S.C. § 1983 are entitled to qualified immunity unless a plaintiff pleads facts satisfying a 2-prong analysis.  The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The first prong of the qualified immunity test simply requires a plaintiff to argue facts showing that there has been a statutory or constitutional violation.  *See Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011).

To satisfy the second prong of the test, a plaintiff must show that a defendant violated a right that is "clearly established at the time of the challenged conduct." *Id.*  The law is "clearly established" if the plaintiff is "able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson,* 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (internal quotation omitted); *Wilson v. Layne*, 526 U.S. 603, 617 (1999).  "We do not require a case

directly on point, but existing precedent must have placed the statutory or constitutional question *beyond debate*." *al–Kidd,* 563 U.S. at 741 (emphasis added). This standard ensures the officer has "fair and clear warning" of what the Constitution required at the time of the conduct in question. *Id.* at 746 (internal quotation omitted); *Richards v. Wisconsin*, 520 U.S. 385, 395 (1997).

An additional consideration exists in the analysis of a qualified immunity defense on a motion for summary judgement: Once a defendant invokes qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (internal citation omitted). Thus, although the Court "draws all factual inferences in favor of the non-movant, . . . once the issue of qualified immunity is raised, the non-movant (*i.e* the plaintiff in this case) bears the burden of rebutting the defense." *Johnson v. Eggebrecht*, No. 9:14-CV-144, 2015 WL 9703791, at *4 (E.D. Tex. Dec. 28, 2015), *report and recommendation adopted*, 2016 WL 165091 (E.D. Tex. Jan. 14, 2016) (citing *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "The plaintiff can defeat summary judgment by rebutting the qualified immunity defense as a matter of law or by raising a genuine fact dispute that is material to the issue of immunity." *Johnson*, 2015 WL 9703791, at *4.

## III. DISCUSSION

### A. Mr. Johnson's Fourth Amendment Claims

#### a. Initial Traffic Stop

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v.*

*N. Carolina*, 135 S. Ct. 530, 536 (U.S. 2014) (citing *Brendlin v. California,* 551 U.S. 249, 255–259, (2007)).  To justify this type of seizure, an officer must have "reasonable suspicion," or "a particularized and objective basis for suspecting the particular person stopped" has broken the law.  *Id.* (citing *Prado Navarette v. California,* 134 S.Ct. 1683, 1687–88 (2014)).  However, "the constitutional reasonableness of the stop does not depend upon the actual motivations of the officer involved.  An officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is to investigate unrelated criminal offenses."  *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003) (citations omitted).

Sgt. Hall's dash cam video shows that Mr. Johnson drove closely behind a car in the left lane before passing Sgt. Hall in the right lane.  (Doc. No. 35, Ex. 2, 20:01:11.)  Texas Transportation Code § 545.062 states that a driver "must maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway."  Sgt. Hall explained to Mr. Johnson that he had pulled him over for following too closely behind another car.[5]  (Doc. No. 35, Ex. 3, 0:13.)  Based on Sgt. Hall's observations about Mr. Johnson's driving behind another vehicle, Sgt. Hall had reasonable suspicion to believe a traffic violation had occurred.

Mr. Johnson argues that Sgt. Hall was simply relying on a "rouse or pretext of violating a clearly established traffic law[]" to pull him over.  (Doc. No. 38, at 5.)  However, as explained above, the actual motivations of the officer do not inform the constitutional reasonableness of a

---

[5] Sgt. Hall also told Mr. Johnson that he pulled him over for "nearly cutting me off."  (Doc. No. 35, Ex. 3, 0:13.) "Nearly" cutting someone off, as opposed to actually cutting someone off, is not a violation of the law.  *See* TEX. TRANS. CODE § 545.053.  Sgt. Hall's dash cam video shows that Sgt. Hall was not forced to significantly reduce his driving speed when Mr. Johnson passed him, or that Mr. Johnson's transition into the right lane otherwise placed Sgt. Hall in an unsafe driving condition.  (*See.* Doc. No. 35, Ex. 2, 20:01:11.)  Indeed, Sgt. Hall's written warning to Mr. Johnson stated that he was only being warned for following too closely, not for "nearly cutting off" Sgt. Hall.  (Doc. No. 35, Ex. 8.)  The Court does not consider the allegation that Mr. Johnson nearly cut off Sgt. Hall in its analysis.

traffic stop. *Sanchez-Pena*, 336 F.3d at 437. As long as Sgt. Hall had a reasonable suspicion that Mr. Johnson committed a traffic violation, his traffic stop was justified. *Id.* Based on Sgt. Hall's observations, supported by the dash cam video, that Mr. Johnson followed closely behind a car in the other lane, Sgt. Hall had reasonable suspicion to justify stopping Mr. Johnson.

Mr. Johnson also alleges that Sgt. Hall changed his speed in order to "set Plaintiff up for the traffic stop" by making it more difficult for Mr. Johnson to safely pass him. (Doc. No. 38, at 6-7.) This argument is not persuasive. Sgt. Hall did not force Mr. Johnson to drive closely behind a vehicle in the left lane; Mr. Johnson could have waited until he had more space from the car in front of him before passing Sgt. Hall. Further, as Sgt. Hall notes, these fluctuations in speed were minimal and occurred as Sgt. Hall was moving up and over a hill. (Doc. No. 43, at 4-5.) Mr. Johnson's argument is insufficient to create a genuine issue of material fact.

In his reply brief, Sgt. Hall belatedly argues that Mr. Johnson is improperly expanding the scope of his Fourth Amendment claim to include unlawful seizure. (Doc. No. 43, at 5.) The Court disagrees. Pro se pleadings must be liberally construed, *Erickson,* 551 U.S. at 94, and Mr. Johnson pled enough facts in his Amended Complaint to initially support claims of both an unlawful seizure and unlawful search. (*See.* Doc. No. 28, at 3 ("There is no credible evidence of either [traffic] violation taking place.").) Even so, for the reasons stated above and based on a review of the evidence on the record, Mr. Johnson has failed to prove that Sgt. Hall's initial traffic stop violated Mr. Johnson's Fourth Amendment rights. Thus, Sgt. Hall is entitled to qualified immunity on Plaintiff's Fourth Amendment claim with respect to the initial traffic stop. The Court **GRANTS** Sgt. Hall's Motion for Summary Judgment with respect to this issue.

### b. Detention and Car Search After Initial Stop

"A seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes,* 543 U.S. 405, 407 (2005). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States,* 135 S.Ct. 1609, 1614 (2015). An officer's mission during a traffic stop includes "ordinary inquiries incident to [the traffic] stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez,* 135 S.Ct. at 1615 (citing *Caballes,* 543 U.S. at 408; *Delaware v. Prouse,* 440 U.S. 648, 658–660 (1979)); *see also United States v. Shabazz*, 993 F.2d 431, 435 (5th Cir. 1993) (quoting *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1998) ("An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation.")).

After Sgt. Hall pulled over Mr. Johnson, he asked him about the incident, looked at his license and registration, checked for warrants, gave a verbal warning, and handed back Mr. Johnson's driver's license. (Doc. No. 35, Ex. 3, 0:13-5:40.) These actions were in pursuit of the "mission" of the traffic stop. *See Rodriguez*, 135 S.Ct. at 1614; *Shabazz*, 993 F.2d at 435. However, Sgt. Hall immediately began questioning Mr. Johnson about illegal weapons and narcotics after concluding these activities, extending the traffic stop beyond the original mission. (Doc. No. 35, Ex. 3, 5:30.)

In order to prolong a traffic stop in July 2014 beyond its intended "mission," the Fifth Circuit required (1) that the stop transitioned into a consensual encounter between an officer and individual, *Sanchez-Pena*, 336 F.3d at 441-43 or (2) that a police officer had developed

independent reasonable suspicion to justify further detaining the individual, *Shabazz*, 993 F.2d at 435. Thus, Sgt. Hall needed some basis (reasonable suspicion or consent) to continue questioning Mr. Johnson after he had concluded his activities reasonably related to the traffic stop. *Sanchez-Pena*, 336 F.3d at 441-43; *Shabazz*, 993 F.2d at 435.

### i.     Consensual Encounter

With respect to the first exception, the Fifth Circuit has found that officers may continue to ask questions after activities related to the initial traffic stop have ended as long as a reasonable, innocent person in the driver's position would understand that he or she was free to leave. *Sanchez-Pena*, 336 F.3d at 443. In other words, a citizen is effectively consenting to answering a police officer's additional questions. Courts review the totality of the circumstances in evaluating whether an individual would reasonably believe he was free to walk away from an officer. *Id.* at 443; *United States v. Beltran*, 650 F. App'x 206, 207 (5th Cir. May 23, 2016). However, courts have identified certain factors that may be relevant in the analysis: "(1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with an officer's request might be compelled." *Carney v. Brandon Police Dept.*, 624 F. App'x 199, 202 (5th Cir. September 1, 2015) (citing *United States v. Mask*, 330 F.3d 330, 337 (5th Cir. 2003); *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)). It is not necessary for the police officer to specifically tell an individual that they are free to go for a traffic stop to transition into a consensual encounter. *United States v. Muniz*, 340 F. App'x 192, 196 (5th Cir. 2009) (citing *United States v. Brown*, 102 F.3d 1390, 1394-97 (5th Cir. 1996)); *see also Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996).

Ultimately, Sgt. Hall's questions led Mr. Johnson to refuse a search of his vehicle. (Doc. No. 35, Ex. 3, 5:40.) Once Sgt. Hall stated his intention to perform a dog sniff of Mr. Johnson's vehicle, there is no debate that Mr. Johnson was again being detained as part of the traffic stop. *See, e.g.*, *United States v. Dortch*, 199 F.3d 193 (5th Cir. 1999), *corrected on denial of reh'g,* 203 F.3d 883 (5th Cir. 2000) (Unreasonable continuation of defendant's detention even though officers told defendant that he would be free to go after computer check was finished because officers also told defendant they would still detain his car until they had performed a canine search.) At most, only a small window of time—from when Sgt. Hall questioned Mr. Johnson about illegal narcotics to when Sgt. Hall told Mr. Johnson he was going to perform a dog sniff around his car—is pertinent to whether there was a consensual encounter between Sgt. Hall and Mr. Johnson.

If there was no consensual time frame during the traffic stop, Sgt. Hall needed independent reasonable suspicion for the dog sniff by the time Sgt. Hall handed back Mr. Johnson's driver's license. *See United States v. Pack*, 612 F.3d 341, 350, 361 (5th Cir. 2010), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). If there was a time period where Mr. Johnson was effectively consenting to answering Sgt. Hall's questions, Sgt. Hall's observations during that time frame could contribute to the alleged reasonable suspicion justifying the dog sniff.

Neither party addressed this issue in their briefing. For purposes of this Motion, the Court finds that it is unnecessary to decide whether there was a consensual exchange between Sgt. Hall and Mr. Johnson. Even taking into account Sgt. Hall's observations until he stated his intention to perform a dog sniff of Mr. Johnson's car, a question of material fact still exists as to whether Sgt. Hall established reasonable suspicion to continue prolonging the traffic stop.

The Supreme Court has held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez*, 135 S.Ct. at 1612. For this reason, a traffic stop cannot be extended to permit officers to conduct a dog sniff of the outside of a car unless the officers have developed independent, reasonable suspicion to justify the dog sniff. *Id.* at 1615. This is because "a dog sniff is not fairly characterized as part of the officer's traffic mission." *Id.*

In *Rodriguez*, a K-9 officer pulled over Mr. Rodriguez for driving on a highway shoulder. *Id.* at 1612. After the officer had attended to everything related to the stop, including checking the car occupants' driver's licenses and issuing a warning for the traffic offense, he asked permission to walk his dog around Mr. Rodriguez's vehicle. *Id.* at 1613. Mr. Rodriguez refused. *Id.* The officer proceeded to detain Mr. Rodriguez and walk the dog around the car. *Id.* Seven or eight minutes elapsed from the time the officer issued a warning for a traffic violation to the time the dog alerted on the vehicle. *Id.* The Supreme Court found that even the *de minimus* extension of time spent to perform the dog sniff was unlawful. *Id.* at 1616. "The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conducting the sniff 'prolongs'—*i.e.* adds time to—'the stop.'" *Id.*

Sgt. Hall does not mention the Supreme Court's decision in *Rodriguez* at all in his briefing. Instead, Sgt. Hall relies on the Supreme Court's decision in *Caballes* for the assertion that "the use of well-trained narcotics-detection dog during a traffic stop on the outside of the car does not compromise legitimate privacy interests." (Doc. No. 34, at 13 (citing 543 U.S. at 409).) However, Sgt. Hall ignores *Caballes*' additional statement, quoted by *Rodriguez*, that "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become

unlawful if it is prolonged beyond the time reasonably required to complete that mission." *See Caballes*, 543 U.S. at 407; *Rodriguez*, 135 S.Ct. at 1612 ("The Court so recognized in *Caballes*, and we adhere to the line drawn in that decision.").

Fifth Circuit law in 2014 was likewise clear that once an officer had completed the tasks reasonably related to the initial traffic stop, that officer needed reasonable suspicion to justify further detaining the occupants of a vehicle. *See Pack*, 612 F.3d at 350. As early as 1993, the Fifth Circuit had held that "[w]hen the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." *Shabazz*, 993 F.2d at 435 (quoting *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1998)). "This is because a detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). Indeed, the Fifth Circuit has held that a three-minute delay, or a delay of "moments," or a "trivial delay" between the completion of a computer check and a later search or dog sniff can be unreasonable. *See United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000); *Dortch*, 199 F.3d at 198; *United States v. Ellis*, 330 F.3d 677, 681 (5th Cir. 2003). The law regarding prolonging a traffic stop beyond its original mission was clearly established as of July 2014.

## 2. Constitutional Violation

As stated previously, Sgt. Hall does not address his basis for prolonging the traffic stop in the argument section of his Motion for Summary Judgment. *See supra*, at 4. However, in various other places, including the background section of his Motion and an attached affidavit, Sgt. Hall asserts that he had developed reasonable suspicion over the course of the traffic stop. (Doc. No. 34, at 6; Doc. No. 35, Ex. 4, ¶8.) Specifically, Sgt. Hall asserted that Mr. Johnson

"seemed very nervous, spoke loudly, and moved around a lot. . . . Plaintiff's nervous behavior was consistent with someone in possession of illegal narcotics and gave me a reasonable suspicion that he was in possession of illegal narcotics."  (Doc. No. 35, Ex. 8, ¶8.)

Mr. Johnson challenges Sgt. Hall's basis for reasonable suspicion.  He argues "there is not a reason to believe that plaintiff's behavior is no different than any person stopped by a policeman, told that you have committed a traffic violation and that your car was going to be searched for drugs."  (Doc. No. 38, at 7-8.)  Mr. Johnson argues that Sgt. Hall's alleged reasonable suspicion was based only on a hunch and is thus insufficient.  (*Id.* at 8.)

Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch'."  *Terry v. Ohio*, 392 U.S. 1, 27 (1968).  It must be based on "specific and articulable facts . . . taken together with rational inferences from those facts."  *Terry*, 392 U.S. at 21.  Courts in this circuit have consistently found that nervousness, without more, is insufficient to support reasonable suspicion.  *See United States v. Macias*, 658 F.3d 509, 520 (5th Cir. 2011) (no reasonable suspicion where driver seemed unreasonably nervous, "as evidenced by his failure to put his truck in park and his avoidance of eye contact" because "[n]ervousness, standing alone, generally is not sufficient to support reasonable suspicion."); *United States v. Cavitt*, 550 F.3d 430, 437 (5th Cir. 2008) ("Reasonable suspicion must be based on more than the officer's sense that a detainee appears to have something to hide.") (citing *United States v. Estrada,* 459 F.3d 627*,* 631 (5th Cir. 2006); *United States v. Santiago,* 310 F.3d 336, 338-39 (5th Cir. 2002)); *United States v. Jenson*, 462 F.3d 399, 404–05 (5th Cir. 2006) (Driver's delay in pulling over combined with nervous behavior was insufficient to support reasonable suspicion).  *See also Pack*, 612 F.3d at 358-59 (finding that "*extreme*, physically manifested, nervousness . . . conflicting stories, and the fact that [individuals] were traveling along a drug trafficking corridor

combined to form reasonable suspicion."); *United States v. Henry*, 372 F.3d 714, 715–16 (5th Cir. 2004) ("Based on Henry's nervousness, his inability to provide basic information about his trip or his passengers, inconsistencies between Henry and his passengers, and Henry's baggy clothes, the arresting officer requested and received consent from Henry to perform a pat down."); *Brigham*, 382 F.3d at 508 ("Conklin's increasing suspicion was also fueled by Brigham's *extreme* nervousness, his avoidance of eye contact, and his pattern of answering the officer's questions with questions of his own."); *United States v. Grant*, 349 F.3d 192, 198 (5th Cir. 2003) (Reasonable suspicion where driver appeared nervous, passenger had been fumbling around in passenger seat, occupants gave different stories about their stay in Houston, and driver admitted that the two men had smoked marijuana in the car.)

The evidence must be viewed in the light most favorable to Mr. Johnson. *Anderson*, 477 U.S. at 248. In the video of the stop, Mr. Johnson complies with Sgt. Hall's requests and is forthright in answering Sgt. Hall's questions. Mr. Johnson does not lie to Sgt. Hall or tell him an inconsistent story. It is not readily apparent, as Sgt. Hall asserts in his affidavit, that Mr. Johnson "spoke loudly[] and moved around a lot." (Doc. No. 35, Ex. 8, ¶8) Although Mr. Johnson stutters and exhibits some nervousness when asked for consent to search his vehicle (Doc. No. 35, Ex. 3, 5:40), his behavior does not appear extreme.

The analysis in *Martin v. Tipton* is persuasive. *See* No. 9:05-cv-0119, 2006 WL 1804621 (E.D. Tex. June 28, 2006). An officer pulled over Mr. Martin for speeding at least one mile per hour over the speed limit. *Id.* at *1, *3. After the officer completed a computer check, he continued to question Mr. Martin and asked for consent to search his vehicle. *Id.* at *1. Mr. Martin denied consent and the officer called for a dog unit to perform an open air search of the car. *Id.* The officers searched the vehicle, and although the original officer claimed some

marijuana residue was found in the car, Mr. Martin was not arrested and no other drugs or weapons were found. *Id.* The court found that 1) the law was clearly established in 2005 that an officer must have reasonable suspicion to prolong a traffic stop after the legitimate justification for the traffic stop has ended and 2) that a question of material fact existed as to whether the officer had reasonable suspicion to prolong the traffic stop. *Id.* at *3-5. Specifically, the court found that the videotape footage from the stop did not "establish, for summary judgement purposes, that a reasonable officer would have had a suspicion of criminal activity sufficient to justify a detention of over thirty minutes while waiting for a dog." *Id.* at *4; *see also Martin v. Tipton*, 222 F. App'x 366 (5th Cir. 2007) (Dismissing appeal on the basis that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial." (quoting *Tamez v. City of San Marcos*, 62 F.3d 123, 125 (5th Cir. 1995)).

The Court finds, as in *Martin*, that a factual question remains as to whether, based on the totality of the circumstances, Sgt. Hall established the reasonable suspicion necessary to further prolong the traffic stop in order to perform a dog sniff. Because a search following an unlawful detention is also unlawful, *See Dortch*, 199 F.3d at 200, summary judgment is also precluded with respect to the search of Mr. Johnson's car. *See Martin*, 2006 WL 1804621, at *4.

Thus, the Court **DENIES** Sgt. Hall's Motion for Summary Judgment with respect to this issue.

### B.    Mr. Johnson's Fourteenth Amendment Claims

The Equal Protection Clause directs that "persons similarly situated should be treated alike." *Williams v. Bramer,* 180 F.3d 699, 705 (5th Cir.1999). "[T]o state a claim of racial

discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race." *Coleman v. Houston Indep. School Dist.,* 113 F.3d 528, 533 (5th Cir. 1997) (citing *Washington v. Davis,* 426 U.S. 229, 240–42, (1976); *Vera v. Tue,* 73 F.3d 604, 609 (5th Cir.1996)). "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *See Johnson v. Rodriguez,* 110 F.3d 299, 306–307 (5th Cir. 1997).

Sgt. Hall argues that because there was reasonable suspicion to pull over Mr. Johnson's car for a traffic violation, there is no Fourteenth amendment violation. (Doc. No. 34, at 11.) Sgt. Hall does not provide any caselaw that supports this argument.[6] Sgt. Hall also does not address whether prolonging the traffic stop to perform the dog sniff violated the Fourteenth Amendment. In his reply brief, Sgt. Hall argues that "other than a brief diatribe, Plaintiff's Response does not discuss racial animus or any other impermissible grounds for the traffic stop." (Doc. No. 43, at 4.) Sgt. Hall argues that Mr. Johnson "fails to provide any competent summary judgment evidence that racial animus was a motivating factor for Sgt. Hall." (*Id.*)

Mr. Johnson addresses race in two sentences of his opposition:

> A black man traveling through a predominately white city with only white cops who has stopped Plaintiff for no visible legal reason in [sic] not a 'routine traffic stop' anywhere but the City of Canton. Whenever a Black man stands up for his rights it is always characterized as 'being or acting nervous and exhibiting unusual behavior' verses standing his ground for the right treatment under the law.

---

[6] Sgt. Hall cites two cases in this section of his opening brief. (*See* Doc. No. 34, at 11 (citing *Davila v. U.S.*, 713 F.3d 248, 258 (5th Cir. 2013); *U.S. v. Sharpe*, 470 U.S. 675, 682 (1985)). Neither of these cases addresses Fourteenth Amendment Equal Protection violations.

(Doc. No. 38, at 4.) Mr. Johnson does not cite any evidence to support these statements. Beyond these assertions, made in the context of whether Sgt. Hall had a basis to pull over Mr. Johnson, Mr. Johnson does not address his Fourteenth Amendment Equal Protection claim in his brief.

While the constitutional reasonableness of a traffic stop under the Fourth Amendment does not depend on the subjective motivations of an officer, *Sanchez-Pena*, 336 F.3d at 437, the intentions of a state actor do matter in assessing a violation of the Equal Protection Clause of the Fourteenth Amendment. *Piatt v. City of Austin*, 378 F. App'x 466, 468–69 (5th Cir. 2010). Whether a state actor violates the Fourth Amendment may certainly be probative of whether there is an Equal Protection violation,[7] but, contrary to Sgt. Hall's assertions, it is not a dispositive factor.

Even so, there is no evidence that Sgt. Hall's actions—both with respect to the initial traffic stop and the prolonging of the traffic stop—were driven by a discriminatory purpose. The video of the stop shows that Sgt. Hall did not make any reference to Mr. Johnson's race while Mr. Johnson was passing him, while he was first speaking to Mr. Johnson, or while he was alone in his car checking for warrants. (*See* Doc. No. 35, Ex. 2; Doc. No. 35, Ex. 3, 0:00-6:00.) After Sgt. Hall told Mr. Johnson that he was going to perform a dog sniff of Mr. Johnson's car, Mr. Johnson challenged the stop on the basis of race. (Doc. No. 35, Ex. 3, 6:00.) Sgt. Hall was calm in responding "no, sir" to Mr. Johnson's allegations before redirecting Mr. Johnson to be patted down for weapons. (*Id.*) In the video, Sgt. Hall acknowledges that he "locked eyes" with Mr. Johnson as Mr. Johnson was passing him in the left lane. (*Id.*) Mr. Johnson does not raise this incident as evidence of an Equal Protection violation in his brief. Moreover, locking eyes is not

_____

[7] For instance, if an officer did not have any reasonable suspicion to support a traffic stop, the unreasonableness of the stop could be evidence that the officer was motivated by a discriminatory purpose, such as the race of the car's occupants, to pull over the vehicle.

sufficient evidence to show that Sgt. Hall was motivated to pull over Mr. Johnson on the basis of his race.

Mr. Johnson makes generalized assertions that the actions of black men standing up for their rights are always mischaracterized.  (Doc. No. 38, at 4.)  However, Mr. Johnson's "mere belief and negative perception of the social conditions in Texas are not enough to establish § 1983 liability against [Sgt. Hall]."  *Cunningham v. Panola Cty., Texas*, No. 6:10-cv-0362, 2011 WL 2149537, at *10 (E.D. Tex. May 8, 2011), *report and recommendation adopted*, 2011 WL 2135439 (E.D. Tex. May 31, 2011).  Mr. Johnson has not presented competent summary judgment evidence that Sgt. Hall's actions were intentionally or purposefully discriminating due to Mr. Johnson's race at any point during the stop.  Thus, Sgt. Hall is entitled to qualified immunity on Plaintiff's Fourteenth Amendment claims.  The Court **GRANTS** Sgt. Hall's Motion for Summary Judgment with respect to Mr. Johnson's Fourteenth Amendment claims.

## IV.    CONCLUSION

For the reasons stated herein, the Court finds that Sgt. Hall is entitled to qualified immunity on Mr. Johnson's claim that the initial stop violated Mr. Johnson's Fourth Amendment rights.  The Court further finds that Sgt. Hall is entitled to qualified immunity on Mr. Johnson's claim that Sgt. Hall violated Mr. Johnson's Fourteenth Amendment rights.  The Court further finds, however, that genuine issues of material fact preclude granting summary judgment in favor of Sgt. Hall on Mr. Johnson's Fourth Amendment claims relating to his prolonged detention and the search of his car.

Accordingly, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant Steve Hall's Motion for Summary Judgment as set forth above.  (Doc. No. 34.)

**So ORDERED and SIGNED this 18th day of January, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE